Joseph C. Hohenstein May it please the Court, my name is Joseph C. Hohenstein and I respectfully request five minutes for rebuttal time. I represent the petitioner Plasteris Vasilarakis and I want to thank you for the opportunity to present this matter today. Clear and convincing evidence. That is the government burden. And it was interesting to me hearing the earlier oral argument referring to Dante and his seven circles of hell. I prefer to think sometimes of immigration more along the lines of A. A. Milne, confusing and muddling rather. And that is what I think we have here. Rather than clear and convincing evidence, we have muddled and confusing evidence. I bet you don't think the Nugent case is confusing and muddling, do you? The Nugent case. The Nugent case, I will acknowledge that is, in terms of the strength of arguments, that's really my third argument. I'm not sure it shouldn't be your first. Yeah. But that's a matter of. I would think it would. Yes. Why do you think it would be your third? Well, because procedurally the first thing we have to look at is what's the burden of proof for the government to show the requisite conviction that's going to form the basis for its removability or inadmissibility charge. And I don't think this record does that. And if we address the issues there, then we don't need to worry about. Well, he pled guilty to one charge. But one charge, this one charge said that there were three times that he used a credit card device that was fake in order to get money out, which totaled a little over $15,000. Is that correct? That was the charge. So he didn't plead, there weren't three charges. There was only one charge. Is that right? Correct. One charge for the. And the court said to him at the colloquy, you realize, I'm not sure what they are, but you realize that there could be immigration consequences to this. That's what the court said. And he said yes. So if it's there, I know he argues that the government shouldn't be able to say that it's now greater than $10,000, but you can see why somebody looks at everything, including the colloquy, including the information that was filed, and it concludes that it's greater than $15,000. Whereas if you, going to your third argument, Nugent, one might be able to argue that you not only have to look under 1043 AM or A, whatever it is. Yeah, 1043 AM. 1101A43 AM. You don't really do well on M if it's fraud or deceit because it has to be greater than $10,000, even though you may argue that it really wasn't shown it was more than $10,000. I think that's not a great argument. If it's under G, however, if you consider it to be a hybrid and you say that it also has to involve theft, and the Nugent case deems the counterfeiting of checks to be a theft of money, one could argue with that, but that's what the holding is, and there you have to get a sentence greater than a year. This person didn't get greater than one year. He got probation. So, therefore, it would seem that that would be your best argument. If you choose that that's my best argument, I will absolutely go with you on that. I would say the reason I made that as the argument is in terms of defining this offense as a theft offense, you can also look at things other than money. If you think of receipt of stolen property, which has been termed by this court as a theft offense, that in essence is what happens when someone takes a physical credit card and uses it. And so you don't even have to reach theft of money. You can just really reach theft of property if that's the analysis. But there can be a consensual receipt for fraud, which would take you out of theft by deception. Correct. It is rather we don't have a lot of fun things happen on the Court of Appeals. Correct. But I love your argument. This is a former district court judge here who just lost it. I love your argument where you say, well, no, my client didn't just commit a fraud-deceit offense, but he also committed theft by deception. Well, why do you do that? Because he wasn't sent to jail for a year. He was given probation. And if we were to find that, you win on Nugent. But first of all, does Nugent apply here? Nugent was a theft by deception case. And petitioner was found to be an aggravated felon under the fraud and deceit provision. Now, the question before the court in Nugent was whether or not a theft by deception offense is also an offense involving fraud and deceit. Correct. I did not answer the question whether a fraud and deceit offense is also a theft by deception offense. So I question, first of all, whether Nugent applies. And secondly, if it does apply or if the reasoning of it applies such that we have to find out whether fraud and deceit is also a hybrid offense, is it? And is it as to this case or is it as a matter of law? I think this specific offense, which is essentially the conversion of and the use of a credit card, that does have the hybrid elements to it. It is fraud and deceit in the sense that it is a fraudulent use of the card. Do we have to decide it as a hybrid, whether it's hybrid or not, given that Nugent didn't? Well, Nugent didn't have that question. That's right. Nugent had it. Actually, in one sense you could argue it was semi-easy to at least on the surface think of if you have a statute called theft by deception, the theft part would be G. The deception part would be M, fraud or deceit. This is just the opposite. You don't have that. You just have somebody who had a credit card made up and by deceit, that is, got somebody to part with money voluntarily because they thought it was a legal deal. That clearly fits within M, but where is the theft now? Right. And the theft comes in the receipt of the stolen card. And that is a- That's not a theft. Is that a stolen card? Was this a stolen card or was this a counterfeit card? Well, the understanding is that if the government is to be believed that there were victims, those were real cards. No, no, but this case, was the card made up in the name of Ezra Lakas' name? No, my understanding was none of them, and I don't know for sure, but my understanding was the way that the charges were set forth- Whose name was on the card used by the defendants? Not my client's. Not your client, okay. It doesn't make any difference. You got the 28J letter from the Department of Justice, did you not? Yes, I did. Okay. And their position, the Board of Immigration Appeals position, seems to be clear that use of a credit card, whether it's stolen or you make it up or whatever it is, is a taking of property with consent, which consent you use by- which is fraudulently obtained. So that why should we expand Nugent, whereas we shepherdized Nugent and Chambers. It's been followed by no other circuit. Correct. And it hasn't even been followed, it's been limited even by this circuit. And I would agree with you that it has not been followed. Certainly by the Fourth Circuit or the Fifth. It was rejected, as a matter of fact. But the distinction here is what is the underlying offense? And if you can look at the underlying offense, the credit card offense here under 1029, 18 U.S.C. 1029, is fraud-related activity in connection with access devices. So there you have, similar to what you had in Nugent, you had a fraud absolutely within the context of the statute. And you have the use of devices. And it is the use of devices and that those were obtained. It doesn't say how someone obtained or that you obtained them through fraud or that you obtained it by consent. And that's not what happened here. I don't think anybody consented to anybody using these cards. Before we adopt the reasoning of the Board of Immigration Appeals, we're not, of course, bound by them, but we pay them due respect. And based on their latest decision, and they're somewhat experts in this, they deal with it every day, they find that use of the credit card is not the same as forging a check or stealing. It's obtaining money with consent, which money you, which consent you fraudulently obtained. And why does that make sense in a case like this? Why does that make sense, the Board of Immigration Appeals? Well, first of all, the Board of Immigration Appeals isn't a criminal law specialist agency. It doesn't have a specialization in interpreting criminal law, and we know that, and this court found that. The, and I don't find that the notion of consent or not having consent is necessarily an element in theft. I mean, the whole notion of the theft by deception statute was that the consent was there also, but it was a deceptive consent. And so the fraud in the theft by deception statute in Nugent was connected to the theft as well. I don't follow you. In other words, you're saying that if someone makes a, uses a phony check, that that's obtaining the money through a fraud, because someone, the holder of the account consented to it. No, no, no, no. I think what the Board was saying is that if you have consent, then it can't be theft. But I don't think that's, I don't think that's the way Nugent would decide it. I mean, there's no consent here. This was without consent. This was the taking of property without consent. Correct. And that's a classic theft offense. I mean, this. If you go the hybrid route, if you have to even deal with it. Right. Well, then you're, if we adopt your position. Right. Then any taking of goods, money, whatever, by any means whatsoever, would be a hybrid offense. Yes, obviously the person that owns the goods is not consenting to your stealing it or fraudulently getting it or any other way. We'd have to extend that any taking of money, regardless of the artifice, is also a theft of the money or the property. I think the concept, and this is why I was focusing more on the cards than the money. The concept in Nugent was that there was also the notion of property taking. And I would say the same here, that the devices used to then get the money were also taken. So I don't know that you have to go that far. Well, why don't we, if we adopt your thinking. Right. Aren't we going all the way on it? It doesn't make any sense. Your position is the taking of any property or money of another is automatically going to be a theft. So why do we need all these other sections under the statute? If it is part of the offense. If it is part of the offense. You can have a classic, straightforward fraud offense that doesn't necessarily involve the taking or using of property. Like what? Like what? Give me a fraud that is not a theft of money or property. A RICO statute would involve fraud, but there's no taking anywhere in there. Tax evasions are fraud, but they don't involve taking to anything. And so there are still places where there would be a single offense. Perhaps why the court in Nugent found theft by deception to be a subclass of fraud, which is kind of interesting because one can say, well, if it's a subclass of fraud, theft by deception, and one of the reasons used in Nugent for saying it's a subclass, I suggest, is because theft by deception can cover just a $10 bounce check. Right. And they wanted to be assured that it is an aggravated felony. And so they, the court added on the crime of fraud and deceit and found that that was the primary crime and not the crime of, they had to both be found. But fraud and deceit itself is not a minor crime because there must be at least $10,000 to make it an aggravated felony. So do you have to bootstrap on to theft and deception? Well, the theft offense is the same way. It carries the one-year sentencing requirement. So it's not as if, you know, coming from one direction to another. Apparently Nugent didn't think that that was enough to make it aggravated. It wanted the $10,000 as well. Maybe it didn't. Correct. To the extent you can understand Nugent. And it may very well have been a results-oriented decision to examine what the person's underlying offense was to see whether it truly was serious enough. Maybe that's interesting. You mentioned a very interesting phrase, results-oriented decision. Your client started to cooperate in 1995. Correct. It was a very early proper sentence. He was cooperating throughout. There was a great delay through no reasons of his own as far as I can see. They were trying to get other defendants in and finally they did. And he finally pled guilty in a formal plea of guilty in the year of 2000. It is now 2011. And we're still dealing with a crime that involved $15,000. And I'm just wondering maybe is there some room in the law for some result-oriented. Is he detained? No, he's not detained. He's not detained. ICE almost detained him and he actually had a heart attack. He ended up in Hahnemann for a day. It was interesting why I asked the question because I saw all of a sudden his immigration proceedings went out of New Jersey and into Philadelphia and there was some reference to York. He's been on reporting supervision for years since essentially 2005. What happened was the government originally only charged this as a crime involving moral turpitude and not an aggravated felony. And when they formally changed that charge and then they were seeking to detain him, that's when everything happened. So that happened in 2005. So what are we here for? I'm trying to, what's the issue before us now? Let's see, we're 16 years later and we're supposed to decide what, whether this is a hybrid crime, what are we supposed to decide? Well, that's why what I started to say at the beginning is. Why doesn't everybody just take it and just go away and let him go? My perception of this is this most classically falls within what is the timing of the plea agreement? What was the moment of perception in the plea agreement? You're not going to win that one. Let's go back to, I still want to get a fact straight here. Go back to rough justice. Okay. I thought that these credit cards were counterfeit credit cards and they weren't stolen. Where, and you said you thought they were stolen, and I'm just looking here on page 44, the affidavit of the petitioner here, where he says, over a period of time I obtained a total of three fraudulent credit cards from Tommy Savalas, for which I paid $1,000 per card from the proceeds of cash withdrawals I made. Those, I mean, where I'm heading, just so you understand and you get the full picture, is if credit cards were stolen, maybe that's a theft under G. Right. But if they were fraudulent credit cards, then we're really under M on fraud or deceit, and I don't think you can win on the $10,000 issue. The original information indicates that the cards were issued by a bank. The pre-sentence investigation report, when it's reporting on whether there is a victim, and I still maintain there's no victim. Well, somebody had to pay. Somebody had to pay for it. What? It had to have been the issuing bank that made the cardholders whole. But there was no indication that the bank ever lost any money. But DZS Bank never really made any claim here, and nobody can really find out if there was really anything. They probably just wrote it off. Of course, the immigration judge has made a finding of fact, which we're reviewing here. Right. Under the clearly erroneous standard. Right. No, no. I would say that the judge's finding is under the standard of whether the judge properly applied the clear and convincing evidence standard to the facts that were known. But he pled to the crime, and the amount of money is in the crime. He couldn't have pled to the crime unless the amount of money that he pled to was fact or he didn't. He didn't plead to any specific loss, that he created a loss, just that he got the money. He didn't plead that the bank lost the money. So your position is it wasn't 15 or thereabouts. It was what? Well, there was some preliminary reports that he had also used it for a $1,400 purchase of some jewelry at a local store. Maybe that was a loss. And that's what I presented to the judge. But the key here is- He made several admissions during his sentencing proceeding. In the pre-sentence report, they found there was a way that he didn't have any objections to the pre-sentence. I wouldn't waste your time. But the admissions were all related to what was the amount involved. And I will grant you, the amount involved, even with the use of approximately, fairly well set. But whether that amount actually resulted in a loss to the victim, I don't know that it did. Well, look, he couldn't have pled guilty. It couldn't be accepted. If there was no loss, there's no violation of the law. No, the statute doesn't require loss. Well, that's what he was charged with. He was charged with stealing or whatever. No, no, he was charged with obtaining the money. Not that any specific person or bank lost that money. Well, if he obtained it, isn't that a taking? So nobody lost? This is your position. Then we're back at theft. Nobody lost money here? Is that your position? There was no loss? We don't know. We don't know. And it's the government's burden to prove. Well, you don't know. But there's a finding of fact that you have to overturn under the appropriate standard of review. Because the immigration judge found there was a loss. But the immigration judge didn't use the correct standard of clear and convincing evidence because the immigration judge was ignoring the portions of the pre-sentence investigation report that said, we don't know if there's a victim here. We don't have the victim's information. What did you put before the immigration judge to show that there was no loss, even though he pled guilty to a $15,000 fraud? What we said was that the documents didn't indicate that there was a victim of any loss. And he rejected that? And the judge said, I still don't know who the victim was. If he's not entitled to the $15,000 and he gets $15,000, of which he spends a fair amount of it at the racetrack, somebody got the money, therefore it came from somewhere, somebody lost it. Even if that somebody ultimately was DZS Bank that wrote it off, they still lost it. I think we've spent too long on this issue. But what I would say is, if that is the scenario, then you clearly have theft. I mean, if that's the way it was made. No, that's a fraud or deceit. If the Fourth Circuit has it, probably has it, or Martinez in the Fifth Circuit, says that if you take somebody, a property from them without their consent, that's a theft. If you take property from them with their consent, that's a fraud or deceit. Why don't we go that way? Answer that question, and then we have to move on. Yeah, I would say that the taking of the property, it doesn't relate to the consent under this statute. There's no consent requirement one way or the other. Whereas when you did the theft by deception, you did have a fraudulently obtained consent. I mean, I think you look at whether it involved the fraud and deceit, and then separately whether it would meet the classic theft definition, and I think this does. You have five minutes on rebuttal, and you've already gone way over the top. On rebuttal, I will note that I will want to address the timing of the plea issue, because I actually think that that may be the determinative issue. May it please the Court, my name is Nicole Thomas-Thoris, and I represent the respondent, United States Attorney General Eric Holder. The petitioner's credit card fraud conviction is an offense involving fraud or deceit in which the loss to the bank that issued the credit cards exceeded $10,000, and therefore that conviction is an aggravated felony under 1101A43M1, and because the petitioner pleaded guilty to this offense after- The statute here was what, 1029 that he violated? Yes. And 1029 could include fraudulent credit cards and stolen credit cards both, is that right? 1029 refers to conduct involving unauthorized access devices, and- So could that include stolen credit cards? So, for example, if you take my credit card and you start using it, is that an unauthorized credit card device under the statute? Judge, I'm going to apologize. I don't know if a stolen credit card would result in a conviction under this statute. However, I would note that- What would you charge with if there was a stolen credit card then? Do you know? What would he be charged with with a stolen credit card? Yeah, or any of us. What would we be charged with if we took someone else's credit card and used it and signed the person's name? Would it be 1029 or would it be another provision? I'm sorry, Your Honor, I don't know. I would, however, direct the Court's attention to the pre-sentence investigation report at the administrative record, page 534. This is page 7 of the pre-sentence investigation report, and it does seem to indicate here that the identification presented during these transactions was, in fact, the name of the petitioner corresponding with a driver's license with that name. And it says here at paragraph 21 that the identification requested prior to the completion of every cash advance transaction and received from each of the suspects were these driver's license, the names on which corresponded to the names on the credit card. So I would say that the name, it seems from this PSI, that the name on the credit card was the petitioner's name. Yeah, was that credit card, was it stolen or was it fabricated? I believe that it was fabricated. He obtained it from, he paid $1,000 for it to obtain it from somebody else. From Tommy Savalas. Right. Would it make any difference? Under the court's discussion of theft in Nugent, it does go into theft, well, I would say, I would argue that this is a fraud and deceit crime, which requires the taking of property through fraudulently obtained consent. You didn't really address Nugent in your brief. If you didn't adequately address Nugent in your brief, it's a very difficult case and it may or may not be applicable here. Why don't you tell us why it is applicable or isn't applicable in the government's view? Why, let me just be a little more specific, why this case shouldn't also be treated as a theft case as well as a fraud case because, of course, in Nugent, they've treated a theft case as a fraud case. Well, first I would argue that Nugent does not apply, that Nugent's holding was limited to, it went in one direction, being that subsection M, the more broad or universal term offense, then limits subsection G, the more particular theft offense, and that it doesn't go the other way. Well, does Nugent say we shouldn't go the other way? Does it say, would not the reasoning of Nugent apply here, if not the holding? Well, the reasoning, again, was that... Because maybe, I mean, obviously the court believed it important that it be a $10,000 or more offense for it to be an aggravated felony and looking at it the reverse way, maybe it should also be one year or more in jail. Right, but as you noted during the petitioner's argument, the court seems to assume here that the one-year imprisonment is not serious, that if you were to just have the one-year sentence here, that it would be an anomalous result where there would be an offense involving only a small sum of money that... So you don't think this offense is serious enough to have required a jail term? Well, I mean, he wasn't sentenced to time in prison, but I would say that this is a serious offense in that it involved over $10,000, well, serious enough for it to qualify as an aggravated felony under M. And the court here, I mean, sorry, the court in Nugent saw or explained that part of its reasoning was that if they didn't apply that $10,000 threshold to theft offenses in G, that there would be minor offenses that would then constitute aggravated felonies. I don't believe that goes the other way because they started from the premise that the one-year imprisonment was not serious. So you're saying that $10,000 is more serious than one year in prison? That's what the Nugent court was saying. Well, he was sentenced, you know, it's just exactly 10 years ago. 10 years ago. And here we are in 2011, wondering if we should send this man with no other convictions back to Greece where he hasn't been for 41 years. The government presses this very seriously. Your Honor, this case has been going on for a long time. The aggravated felonies statute through AEDPA, I'm sorry, it does address what Congress considers are serious crimes. I would note, however, as the immigration judge did in his decision, that there are sympathetic factors here and sometimes deferred action. In this case, very sympathetic factors. And what did the immigration judge say, that maybe, maybe they could go elsewhere? Well, the immigration judge referred to the DHS having the ability to defer action or to at least... I think that was a very broad hint coming from the immigration. Right. And at this point, I don't know of a request to DHS for any deferred action. I do, however, know that DHS's standard response to that is to wait until the petition for review has been adjudicated. So I do acknowledge, Your Honor, that this has been going on for a long time and it is concerning $15,000. How would it proceed then if, let's say, we deny the petition for review? The petitioner has the option of then seeking DHS deferral of removal? Yes, the petitioner can request that from DHS. Can the government consent to that? Can it be a consent? Can I say? Can the government consent? Can the government consent? If he files that, could the government consent? Or just say, we take no position? As opposed to not opposing it? Well, I think consent. Could the government consent? I will... I'm not saying would they. I'm not sure they can. They can consent. If they saw... It would have to be that the DHS would have to tell, would have to have that position going forward before, I mean, while the petition is pending, the DHS would have to say, yes, we know you have a petition pending, but we will consent to not remove you. I think they can. However, I believe that the DHS does not, as a matter of course, until after. Well, certainly they could not oppose it. I mean, maybe they'd be difficult to consent, but maybe they don't oppose. So I don't know. Just ask it. I've interrupted enough. I'll ask no more questions. That's all right. And so I would just go back to the logic in Nugent, in that it was very specific in that, I mean, there is language in Nugent that would indicate that it was a broader holding, but the reasoning was that the M section, subsection M limited subsection G and not the other way around. And that there is no occasion, therefore, to decide whether this is a theft offense. The record DHS established by clear and convincing evidence that this was an offense involving fraud or deceit in which the loss to the victim or victims exceeded $10,000. And I think that being that that is the larger or universal proposition that was at the heart of the syllogism in Nugent, that that's what distinguishes this case from Nugent, and that there's no need to then go into whether or not this is a theft, whether it meets. But if he pled guilty to a statute, 1029, if that statute includes not only fraudulent credit cards, but also stolen credit cards, conceivably, one can make an argument that it's a hybrid offense. When you go back, could you check and see and let us know, does the government prosecute stolen credit cards under 1029 as well as fraudulent credit cards? Just a factual question. Yes, Your Honor. Let me just make a note of that. Getting to your 28J letter. Yes. I take it's your position we should adopt the position of the BIA in this type of case. Is that correct? But if the court. There's a difference between the 28J case that you brought to our attention and the case before the court, is there not? Or are they exactly similar? Well, in the board decision in Madruga-Garcia, the board was clarifying their definition of theft, and in so clarifying was distinguishing the fraud and deceit offenses. And I think that that would be helpful if the court were to have to decide whether or not this is a theft offense, although my first position is that that doesn't have to happen because Nugent does not apply. I'm sorry, Judge Cowen, maybe I'm not answering your question. Could you restate it? Well, my question is, in what way does this Garcia case, is it that you brought to our attention, in what way does it differ from the case that's before us today, or is it on all fours? Well, I would say that in its description of theft being taken without consent versus fraud being with fraudulently obtained consent, that that description of what an M offense is directly applies here in that this was fraudulent, taken through fraudulently obtained or through fraud, which implies fraudulently obtained consent. And so if we look to the board's definition there, that this is a fraud and deceit offense under M and not a theft offense under G. So your position is they are on all fours? The BIA's decision would square totally with what we have before us? Yes, I think that the definition that they gave there would apply. Well, would that be true if it turned out that these credit cards were not, were actually stolen credit cards or fabricated? Well, not fabricated. If they were stolen from someone, well, they wouldn't have been stolen from, well, the number would be stolen and the card would be fabricated, I take it. Right, unless, I mean, unless the physical card were stolen and identification. He took the card that the cardholder had, yeah. All right, I understand. Could I see the 28J? I have no further questions. I never saw it. Let me just see. You know, I have not seen the 28J letter. I haven't received it yet. Okay. But I question the timing of it. This is a BIA decision from 2008. And I guess Judge Cowen received this maybe on the eve of the argument. I would suggest it should have been sent a lot sooner because I'm candidly unprepared on this. Right, I apologize. And I don't know that a 2008 decision, a three-year-old decision, is really properly the subject of a 28J, but in any event. I apologize, Judge Barry. There was some discussion about whether I looked at the rule and I saw that it came to my attention. However, I do acknowledge that it did come to my attention late in this game. And I would, again, stress that our position from the get-go, and I agree we did not discuss it very fully in the brief, was that Nugent simply did not apply. So there was no occasion to go into the distinction between fraud and theft. But I see that my time is dwindling. And if I may conclude, unless there are other questions. No, I have no other questions. Okay, I would just conclude by stressing that Nugent does not apply here because we have what is an offense involving fraud or deceit, which requires taking with fraudulently obtained consent, and that the Nugent syllogism goes only one way. And with that, I will also say that I will go back and double-check and see whether or not, as Judge Amber requested, that this statute can be used in convicting both stolen credit cards and credit cards with, I'm sorry, exactly. And submit a letter to us within a week from today.  Thank you, Your Honors. Thank you. Good morning. Thank you, Your Honor. Can I just ask you a preliminary question? To your knowledge, can 1029 include a stolen credit card? Yes, and I believe it did in this situation. 1029A2 is the subsection that Mr. Vassilakis was convicted under. The previous subsection, 1, relates to a Nugent intent used to defraud to use counterfeit devices. Subsection 2, which is his subsection of conviction, refers to use of unauthorized devices. And so that distinction is raised. I don't know if an unauthorized access device includes a stolen credit card. Right. But if you look at the pre-sentencing investigation report, and in the administrative record on paragraph 32, it refers to other portions of this scheme that involved a number of other people where one of the co-conspirators obtained the cards from someone in New York with stolen account numbers. So they did use stolen account numbers. And the interesting thing, when you were discussing whether Mr. Vassilakis used cards that were issued in his own name, if you turn to page administrative record 538 on paragraph 39, and I'm sorry, this isn't the PSI. I believe this is actually the PSI. But the reference there is that's where Mr. Vassilakis specifically was cited for using certain things. The other co-conspirators were all using cards in their own names. But he bought some of these cards from one of those other guys. So it doesn't seem clear whether or not his cards actually had his own name or not on them. Well, it wouldn't make any difference whether it's stolen or the card was fabricated with the number. The fact is that you present the card, and the bank with consent gives you the money if you have the number, which number is a fraud. You obtained through a fraud. No, the numbers were stolen, not fraudulent. I know, but I'm saying you're saying that you're the holder of it, so you're fraudulently using the number. Correct. And the bank is, with consent, giving the money. It's not as if they're... Right. So how does it become a theft regardless of whether the card is stolen or fabricated or what? Because the account itself has been stolen. I mean, it is a real account, and this is where we talk about if there's a victim. Well, forget about the victim. You've got one or the other, right? Once you start, once you say the money is stolen, any time anyone appropriates money that they're not entitled to, you can say it's stolen, so that doesn't answer the question. But the account number was also stolen. Yeah, but what happens in the real world? You have a victim of inconvenience because once the credit card company or the bank discovers that the person really didn't run up these charges, they just wipe them off and issue a new credit card. Right. A lot of us in this courtroom have had that happen where we've had our credit card number taken. But it's unclear whether the credit card company was able to obtain reimbursement at any rate. But my point with that is that is all part of the government's burden to prove, and the lack of clarity about that is enough to bring it back. But let me get to what I asked that I'd be able to address. I know you want to get to one point, but also one other question, and I've asked the government this. If the petition for review is denied, what is the next step to allow, to seek to have a person's removal deferred? Is it to go through DHS? Deferred action is requested to a local field office director of ICE. That field office director generally cannot approve a final grant of deferred action without having it first approved at a regional level at least. But the field office director can deny it. And I can tell you that I've never received any. I've asked for them and I've never received any. I can't even just count them on my own hand. I haven't received deferred actions. I have received requests for extended states. Have you ever tried one if, for example, just hypothetically if the court were to suggest that that be done and that be granted? The government would have the power within the scope of a mediation to make it an agreed upon portion of any final order from the court, yes. I don't know that trial counsel for the government right now has the power to tell you that here. I don't think she does. Yeah, I'm just trying to figure out the process. Yeah, but it is something that does require at a minimum field office director approval and really regional director approval from ICE. And it's very rarely given. And it's a matter of pure discretion that we couldn't even appeal to this court. If I may, and I beg the court's indulgence because it will only take a minute or two, the issue of the timing of the plea. If all of this is actually an aggravated felony, then the government obtained its benefit from Mr. Vassilarakis well before the law changed. The government had control over when and how the plea agreement was going to be arranged. And all of that was something that he held on to for five years. And this is what we were kept from trying to prove at the IJ level when the IJ refused our request for subpoenas. And more importantly, the record itself shows that Mr. Vassilarakis took steps against his interest and the government gained a benefit. That's an interesting way of looking at your 212C argument. And the regulations that the court did not apply, in my opinion, that the court and the board did not apply, allow for a plea agreement to be made in a non-written fashion. In other words, the definition of plea agreement under the St. Cyr test and under the regulations in HCFR 1212.3 is different from the classic definition that you might see in a criminal court and that the criminal attorney cited to me. I think even there he was wrong because you don't need a written plea agreement to have a plea agreement. And the notion that there's a superseding clause within the written agreement still doesn't erase the timing of the original agreement, which is when the government got its benefit from Mr. Vassilarakis. They got it all the way back in 1995 and 1996. You just said something interesting, though, which is not something that I don't think I focused on. It was for the government's purposes that you were not permitted to plead earlier. Exactly. That's separate and apart from a written plea, oral plea. I mean, the written plea was 2,000. I think that's pretty good. Unless there is a reason why you weren't permitted to plead and as a result of that you lost your 212C opportunity. And if the court is going to find that we have to wait until that formal agreement for the date, but if we can say that the understanding that was originally entered into back in the mid-'90s is the date, then, then. But the crucial date is the date of judgment. Under the statute, the crucial date is the date of the judgment. No. Under the regulations, it contemplates that there can be an oral agreement prior. And it was actually the comments, I cited it in my opening brief, comments when the government was adopting the regulations for St. Cyr that indicated we don't want to stay with the hard and fast rule of when the court accepted the plea because that's not when the government gets its benefit. When the government gets its benefit from the plea is when you originally start making the quid pro quo and the government doesn't have to spend its money and resources to go after you because they know that you're going to be going along with them. And that's what happened here. All the way back in the mid-'90s, in 1995 when he first got picked up, he said, you know what, I'll tell you everything. And they said, great, thank you. Now we've got to go after all these other guys. And, well, you're going to have to wait until we do that. And if you look in the PSI, there is reports of some of the co-conspirators running away to Greece, running away to Canada, and they had to go get these guys. So if the... None of them were deported, were they? Yeah. When the board and the immigration judge ignored that regulation, then, by my way, and said, you have to go by just the documents, they ignored the reason for the regulation in the first place. Any more questions? No. Thank you very much. Thank you. The case was well argued. We'll take it under advisement.